# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,

v.

Gregory Carl Koch, and
David Jerome Kangas

      Defendants.

Case No. 20-cr-291 (DSD/DTS)

**ORDER**

Defendants filed several non-dispositive motions, each either seeking to compel the Government to produce certain discovery or requesting that the Government facilitate its disclosure from Park Nicollet. The Court addresses the contested motions below.

## FACTS

A grand jury indicted Defendants Gregory Koch and Jerome Kangas under 18 U.S.C. §§ 2, 1341 for each aiding and abetting the other in a scheme to defraud their employer, Park Nicollet. Indictment at 1, Dkt. No. 1. The indictment alleges that Koch, who was Kangas's supervisor, approved fraudulent timecard entries and authorized overtime pay to which Kangas was not entitled. *Id.* ¶¶ 6–7. As a result, Kangas allegedly received from Park Nicollet more than $505,000 of pay over a five-year period for 38,000 hours of work he did not perform. *Id.* ¶¶ 1, 8.

Park Nicollet conducted an internal investigation into Defendants' actions. After completing that investigation, Park Nicollet turned over its investigation findings to law enforcement. Park Nicollet complied with requests from the FBI and United States Attorney for certain information, but it did not relinquish *all* its documents to the

Government—only those of its choosing and ones the Government requested. Park Nicollet continues to cooperate with the Government and, according to Defendants, Park Nicollet remains actively involved in the prosecution.

Defendants allege that Park Nicollet handed the Government a complete investigation ready for prosecution. To illustrate the relationship and coordinated efforts between the Government and Park Nicollet, Defendants provide these examples: Park Nicollet willingly provided the Government with documents it requested. Defs.' Mem. at 5 ¶ 1, Dkt. No. 67. Park Nicollet summarized the findings of its internal investigation for the Government in a way that reflected the Government and Park Nicollet's collaboration. *Id.* at 5–6 ¶ 3. Park Nicollet was willing to modify certain findings or products at the Government's request. *Id.* And Park Nicollet's insurance company, Zurich American Insurance Company, regularly communicated with the FBI seeking updates and recommending criminal sentencing provisions if the Government secured a conviction. *Id.* at 7–8 ¶¶ 1–2.

## ANALYSIS

### I.   Motion for Government Disclosure

Defendants first request that the Government disclose several documents and records from Defendants' employment at Park Nicollet and from Park Nicollet's internal investigation, which are material to preparing for their defense. These include work emails, employment contracts, and performance evaluations. Defendants allege many of these items are also exculpatory or could be used at trial as impeachment evidence, and thus the Government must also disclose them under *Brady v. Maryland*, 373 U.S. 83 (1963). The Government does not dispute Defendants' assertion that the items they seek

are material or favorable, but argues merely that it does not possess those documents to disclose. It suggests that Defendants should obtain those documents directly from Park Nicollet via subpoena.

The Government must disclose certain discovery to Defendants. Its disclosure obligations arise from two sources. First, Federal Rule of Criminal Procedure 16 requires the Government to permit defendants to inspect and copy documents material to preparing their defense that are within its possession, custody, or control. Fed. R. Crim. P. 16(a)(1)(E)(i). Second, Due Process requires the Government to disclose favorable defense evidence material to guilt or punishment. *Brady*, 373 U.S. at 87.

### A.    Rule 16

Under Rule 16, the Government must disclose certain discovery to the defense, if requested. One category of those discovery disclosures is documents and objects:

> **(E) Documents and Objects.** Upon a defendant's request, the government must permit the defendant to inspect and to copy . . . papers, documents, data, . . . tangible objects, . . . or copies of portions of any of these items, if the item is within the government's possession, custody, or control and:
> >  **(i)** the item is material to preparing the defense;
> >  **(ii)** the government intends to use the item in its case-in-chief at trial; or
> >  **(iii)** the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). Though the rule's wording emphasizes the parties' duty to engage in discovery disclosure, it "is intended to prescribe the minimum amount of discovery to which the parties are entitled" and courts have "the inherent right to enter an order under this rule." Fed. R. Crim. P. 16 advisory committee's note to 1974 amendment.

In the context of Rule 16, "government" means the prosecuting United States Attorney and any (usually federal) agency participating in the investigation or cooperating with the prosecution. *United States v. Poindexter*, 727 F. Supp. 1470, 1477 (D.D.C. 1989)

("Rule 16(a)(1)[(E)],[1] requires only the production of documents in the hands of the prosecutor, any investigative unit under the prosecutor's control, and any other federal agency allied with the prosecution or involved in the prosecution of criminal litigation."). Here, however, defendants allege that Park Nicollet is so entwined with the Government's investigation that documents in its hands are constructively within the Government's possession or are within its control.

### 1. Possession

Because Rule 16(a)(1)(E) does not contain a due diligence requirement, like Rules 16(a)(1)(D) and (F), courts have typically declined to interpret the rule to create a disclosure obligation based on constructive possession. *E.g.*, *United States v. Mills*, No. 16-cr-20460, 2019 WL 3423318, at *3 (E.D. Mich. July 30, 2019), *United States v. Gregory*, No. 2:05-cr-64, 2006 WL 8439328, at *2 (E.D. Tenn. Oct. 6, 2006); *see* 25 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 616.05 (2018) ("In order to trigger discovery under this provision, the papers, documents, or tangible objects must be in the actual custody or control of the federal government.").

But when the Government's investigation or prosecution of a defendant is a joint effort with another agency, the Government must determine whether those agencies have any information embraced within Rule 16. *See United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003) ("While Rule 16(a) only applies to materials within the 'possession, custody, or control of the government,' courts have found that the 'possession, custody, or control of the government' requirement includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor."); *United States*

---

[1] Before the 2002 amendment, Federal Rule of Criminal Procedure 16(a)(1)(E) was formerly Rule 16(a)(1)(C).

*v. Skaggs*, 327 F.R.D. 165, 174 (S.D. Ohio 2018) ("The prosecution is deemed to have knowledge of and access to material that is in the possession of any federal agency that participated in the investigation that led to defendant's indictment, or that has otherwise cooperated with the prosecution."). Thus, when a governmental agency acts as an arm of the prosecution team, their possession of discoverable evidence may be attributable to the Government and require the Government to make reasonable efforts to obtain and disclose that Rule 16 evidence. This Court, however, has found no cases in which a court has found that a private entity's possession of documents has been held to be within the constructive possession of the prosecuting entity. Control, as distinct from possession, is another matter.

### 2. Control

Rule 16's obligation to disclose extends not only to document's the Government possesses, but also to those over which it has control. "Legal ownership of the requested documents or things is not determinative, nor is actual possession necessary if the [United States Attorney] has control of the items. *Control* has been defined to include 'the legal right to obtain the documents requested upon demand.' The term 'control' is broadly construed." 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 34.14[2][b], at 34–63 to 34-64 (3d ed. 2006) (footnotes omitted); *United States v. Stein*, 488 F. Supp. 2d 350, 361 & n.45 (S.D.N.Y. 2007) (citing Moore's Federal Practice and collecting cases); *cf. Damgaard v. Avera Health*, No. 13-cv-2192, 2014 WL 12599853, at *2 ("[C]ontrol not only encompasses actual physical possession of the documents, but also the legal right or practical ability to demand the documents from a third party.").

Courts have applied this broad understanding of control to order the Government under Rule 16 to request and produce discovery from a private entity. In *United States v. Kilroy*, 523 F. Supp. 206 (E.D. Wis. 1981), the defendant sought documents under Rule 16 that his former employer (Standard Oil) possessed. That Standard Oil, rather than the Government, possessed the documents did not bar the discovery because the Government could easily obtain those documents and thus had control of them. For that reason, the court saw:

> no objection to an order requiring the Government, as the defendant asks, to use its "best efforts" to obtain from Standard Oil all of the documents in its possession which came out of the defendant's former office. . . . Since Standard Oil is cooperating with the Government in the preparation of the case and is making available to the Government for retention in the Government's files any records which Standard Oil has and which the Government wants, however, it is not unreasonable to treat the records as being within the Government's control at least to the extent of requiring the Government to request the records on the defendant's behalf and to include them in its files for the defendant's review if Standard Oil agrees to make them available to the Government.

*Id.* at 215.

Similarly, in *United States v. Skeddle*, 167 F.R.D. 258 (W.D. Ohio 1997), the court found that the Government controlled documents that it once possessed but since returned to a private third-party company. Relying in part on the rationale from *Kilroy*, the court ordered the Government to retrieve those documents and disclose them to the defendant.

Finally, in *United States v. Holihan*, 236 F. Supp. 2d 255 (W.D.N.Y. 2002), the court ordered the Government to disclose documents in the hands of a private party. In *Holihan*, a bank employee was indicted for embezzling money from clients' accounts. In preparation for his trial, Holihan sought discovery under Rule 16 for documents such as bank computer terminal records, the bank's operating procedures, and transaction

6

records. In response, the government denied that those records were "within the possession of the Government and, if such documents exist[ed], they [were] more likely to be in the case files of the . . . Bank investigator[2] investigating the case." *Id.* at 258–59. Because the prosecutor had engaged in a joint investigation with federal agents and the bank investigator, the court found that the discovery sought was within the government's control and ordered its disclosure under Rule 16. *Id.* at 261.

Like the bank in *Holihan*, Park Nicollet conducted an internal investigation in response to allegations of employee misconduct—there embezzlement, here fraud. In both cases, the prosecutor worked closely with the FBI and the victim company to obtain evidence, investigate facts, and facilitate the criminal prosecution of the employee(s). And like the prosecutor in *Holihan*, the Government here claims that it does not possess the discovery Defendants seek, even though that discovery is readily obtainable by it.

Though Park Nicollet, rather than the Government, physically possesses the discovery Defendants seek, the Government has the practical ability to obtain the documents on request. Park Nicollet has worked closely with the Government and fulfilled its requests throughout the investigation and prosecution. There is no reason to believe that Park Nicollet would not continue to provide the Government with whatever documents it requests. For that reason, the Government is in control of the documents

---

[2] *Holihan* is ambiguous about whether the "Bank investigator" is a private employee of the bank or a federal bank *examiner* from Office of the Comptroller of the Currency. *Holihan* abbreviated HSBC Bank as "the **B**ank" and throughout the opinion referred to the **B**ank investigator. This Court presumes that the judge in *Holihan* intended the wording she used and therefore reads *Holihan* as granting discovery from a third-party non-federal entity.

and Rule 16 obligates the Government to obtain and disclose that evidence to Defendants.

**B. *Brady***

Defendants allege that the Government must disclose certain documents they seek under *Brady*, which, along with the cases following it, establishes that Due Process requires the Government to disclose evidence that is exculpatory or that could be used to impeach Government witnesses. *Brady*, 373 U.S. at 83; *Giglio v. United States*, 405 U.S. 150 (1972). The scope of evidence the Government must disclose under *Brady* and *Giglio* is narrower than what Rule 16 requires, but, unlike Rule 16, the Government's disclosure obligation exists irrespective of a defendant's request. *United States v. Bagley*, 473 U.S. 667, 682 (1985) (plurality opinion).

*Brady*'s mandate, however, is not without exception. The Government need not disclose *Brady* evidence if it is available to the defense through other channels, *United States v. Roy*, 781 F.3d 416, 421 (8th Cir. 2015), or is information the defense already possesses, *United States v. Sigillito*, 759 F.3d 913, 929 (8th Cir. 2014).

Rule 17 permits Defendants to subpoena documents from Park Nicollet. Because the documents Defendants seek are available by subpoena *Brady* does not impose any requirement on the Government. *Horton v. United States*, 983 F. Supp. 650, 656 (E.D. Va. 1997). But because Rule 16 does, the Court will grant Defendants' disclosure under Rule 16 rather than *Brady*.

**II.  Motion for In Camera Review**

Defendants next request that the Court review *in camera* medical records of patients Kangas treated. Defendants allege these records will show that Kangas's pay

during those times was for work he actually performed. Thus, if Kangas was treating patients, he was entitled to compensation during that time, his pay would not have been fraudulent, and Park Nicollet would have incurred no loss. *See United States v. Luna*, 968 F.3d 922, 929 (8th Cir. 2020). Similarly, Koch's entry and approval of Kangas's timecard would not have been fraudulent.

Defendants assert they need patients' medical records to establish both that Kangas provided the services for which he was paid and that they were medically necessary. Both Minnesota and federal law, however, protect patient medical records from disclosure. Minn. Stat. § 144.291 et seq.; 45 C.F.R. § 160.101 et seq. Though there is a strong public interest in protecting health information, a defendant can overcome that protection by showing that the protected information is relevant and material to the fairness of the trial. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57–60 (1987). In that circumstance, courts first conduct an *in camera* review of the information to determine its materiality. *Id.*

The Government opposes Defendants' request because it alleges that Defendants must first obtain the patient records before the Court can conduct an *in camera* review. And because the Government does not possess the records—and Park Nicollet instead does—the Government cannot provide the records to the Court for review.

The Court finds that Defendants have established a basis that the patient medical records they seek may contain information material to their defense that is also potentially exculpatory. Thus, the Court will conduct an *in camera* review. The Government must obtain and provide these records to the Court for *in camera* review.

### III.   Motion for a Bill of Particulars

Finally, Koch requests that the Government supplement the indictment with a bill of particulars. Dkt. No. 39. He argues that the indictment alleges his involvement in a scheme to defraud Park Nicollet, yet it was Kangas, not Koch, who obtained any defrauded money. Koch, by contrast, received no money or property. Koch's "I didn't receive any money so I can't be charged" theory is unsupported by the plain language of the statute.

First, the grand jury indicted Koch for **aiding and abetting** Kangas in devising and executing a scheme to defraud Park Nicollet. Someone who aids or abets another in committing a crime is punishable as a principal. 18 U.S.C. § 2. Under this theory of liability, the Government need not prove that the accomplice committed each element of the underlying crime, only that they aided or abetted another in committing that crime. *United States v. Simpson*, 979 F.2d 1282, 1285 (8th Cir. 1992), *abrogated on other grounds by Dixon v. United States*, 548 U.S. 1 (2006). The principal's actions are then attributable to the accomplice. *Pereira v. United States*, 347 U.S. 1, 11–12 (1954); *Nye & Nissen v. United States*, 336 U.S. 613, 620 (1949) ("Aiding and abetting . . . states a rule of criminal responsibility for acts which one assists another in performing.").

Koch is correct that the indictment does not describe what money or property Koch may have obtained from the scheme. But it does not have to. Because Koch was indicted under a theory of accomplice liability, the Government must prove only that Koch aided and abetted Kangas in committing mail fraud—that he "in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed." *United States v. Peoni*, 100 F.2d 401,

402 (2d Cir. 1938) (Hand, J.). Kangas's actions then become attributable to Koch even though Koch asserts it was Kangas who received the funds. Dkt. No. 39 at 1. A conviction of aiding and abetting mail fraud under 18 U.S.C. §§ 2, 1341 does not require that Koch have received anything for his participation.

Second, even if the indictment had charged Koch as a principal rather than an accomplice, the statute would not require that Koch have received any money. Criminal liability for mail fraud requires that the Government prove only (1) the existence of a scheme to defraud, and (2) the use of the mails in executing that scheme. *United States v. Manzer*, 69 F.3d 222, 226 (8th Cir. 1995). The statute's "obtaining money or property" wording provides an alternative theory of liability. One can be guilty of mail fraud for "having devised or intending to devise any scheme or artifice to defraud" or for "having devised or intending to devise any scheme or artifice . . . for obtaining money or property by means of false or fraudulent pretenses . . . ." 18 U.S.C. § 1341. Nothing in the statute requires that the defendant actually receive the money, property, or any other fruit of the fraud.

Because the bill of particulars Koch seeks would not inform him of the nature of the charges with significant precision, granting his motion for a bill of particulars would be improper. *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009).

## CONCLUSION

As Defendants' argue, this criminal prosecution is not like most others. The Government has permitted Park Nicollet to conduct substantial portions of the investigation, for which the Government would traditionally be responsible. Park Nicollet has provided the Government access to its records, its personnel and even its insurer, all

of which are intended to benefit both the Government in its prosecution of Koch and Kangas, and Park Nicollet and its insurer in securing restitution. The defendants in contrast would be required to undertake the time and expense of subpoenaing the records, which would likely engender an objection, further delaying production of the material. In short, protection of Defendants' Due Process rights compels this result in the facts and circumstances of this case. The alternative places a significant burden on Defendants' ability to obtain relevant material and exculpatory evidence as requiring Defendants' to subpoena the material will result in prolonged pretrial litigation, unnecessarily inflated defense costs, and needless delay of Defendants' right to a trial.

## ORDER

For these reasons, IT IS HEREBY ORDERED:

### Koch's Motions for Discovery

1.     Koch's Motion for Discovery and Inspection [Docket No. 36] is **GRANTED IN PART AND DENIED IN PART** as follows:

a.  The United States shall continue to comply with all of its discovery obligations under the Federal Rules of Criminal Procedure and applicable case law.

b.  Koch's request for all of Koch's written, oral, or otherwise recorded statements, whether inculpatory or exculpatory, including emails and text messages is **GRANTED** under Rule 16(a)(1)(A)–(B). The United States shall obtain and disclose these statements within thirty days.

c.  Koch's request for Kangas's statements made in furtherance of the alleged scheme to defraud is **DENIED**. Rule 16(a)(1)(A)–(B) applies only to a defendant's own oral, written, or recorded statement.

d. Koch's request for all material books, papers, documents, photographs, tangible objects, copies of portions thereof, which the Government intends to use as evidence at trial, or which were obtained from or belong to Koch, and which concern his alleged role in the scheme to defraud is **GRANTED** under Rule 16(a)(1)(E). The United States shall obtain and disclose these documents or objects, including Park Nicollet's 2013 and 2014 evaluations of Koch, within thirty days.

e. Koch's request for documentation in Park Nicollet's files confirming an executive awareness of Kangas's billing practices and the gross pay he received for being on 24-hour call during his employment is **GRANTED** under Rule 16(a)(1)(E). If this documentation exists, the United States shall obtain and disclose it within thirty days.

f. Koch's request for Kangas's employment contract from Park Nicollet, which confirms his availability or compensation, is **GRANTED** under Rule 16(a)(1)(E). The United States shall obtain and disclose this documentation within thirty days.

g. Koch's request for his prior criminal record is **GRANTED** under Rule 16(a)(1)(D). The United States shall disclose this record within thirty days.

h. Koch's request for the identification of any expert witness the Government intends to call at trial, including their qualifications and the substance of their testimony, is **GRANTED**. The United States shall make this disclosure no less than 60 days before trial.

i. Koch's request for evidence other than patient records (which are addressed in paragraph 6 below) that the services Kangas provided to patients during off-hours were medically necessary, made at the patients' request, and billed consistent

13

with his employment contract, is **GRANTED** under Rule 16(a)(1)(E). The United States shall obtain and disclose these documents within thirty days.

j.   Koch's request for Park Nicollet's profits gained from Kangas's treatment of patients is **DENIED WITHOUT PREJUDICE**. Koch has not shown how this information is material to preparing his defense.

k.   Koch's request for a transcript of the Grand Jury testimony for impeachment purposes is **DENIED WITHOUT PREJUDICE**. Under Rule 16(a)(3), Rule 16 "does not apply to the discovery or inspection of a grand jury's recorded proceedings." Nor has Koch established a basis for ordering that the Grand Jury transcript be disclosed under Rules 6, 12(h), or 26.2.

l.   Koch's request for records of every patient Kangas treated who was satisfied with his work, and who had reason to call him during off-hours, as well as Kangas's logs documenting his work, is **DENIED**. The Court will review the information *in camera* as Ordered below in Paragraph 6.

m.   Koch's request for the internal investigations of Park Nicollet and its insurance company is **GRANTED** under Rule 16(a)(1)(E). The United States shall obtain and disclose these documents within thirty days.

n.   Koch's request for any emails from Park Nicollet to the Federal Bureau of Investigation, which reference Koch's employment is **GRANTED IN PART AND DENIED IN PART** under Rule 16(a)(1)(E). The United States shall obtain and disclose these documents within thirty days. The United States shall not, however, be required to disclose any emails between Park Nicollet and the FBI, which fall under Rule 16(a)(2) or for which disclosure is prohibited under 18 U.S.C. § 3500.

2.      Koch's Motion to Compel Attorney for the Government to Disclose Favorable Evidence [Docket No. 37] (*Brady* motion) is **GRANTED IN PART** consistent with the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. Within ten days of this order, the United States shall disclose all *Brady* and *Giglio* information in its possession or of which it has become aware and shall promptly supplement its disclosure upon receipt of any additional *Brady* and *Giglio* information not previously disclosed.

To the extent that requests in this motion fall outside of *Brady* but within Rule 16 as discussed above, the United States shall disclose that evidence as ordered. The United States' disclosure shall include:

a.  Evidence of prior inconsistent statements of witnesses, particularly about their ability to view and remember the alleged incidents of treatment rendered by Kangas;

b.  Evidence of prior, admissible convictions of witnesses who will testify at trial; and

c.  Evidence of immunity agreements offered to Government witnesses in exchange for their cooperation or testimony.

3.      Koch's Motion for a Bill of Particulars [Docket No. 39] is **DENIED**.

**Kangas's Motions for Discovery**

4.      Kangas's Motion to Compel Attorney for the Government to Disclose Evidence Favorable to Defendant [Docket No. 55] (*Brady* motion) is **GRANTED IN PART** consistent with the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. Within ten days of this order, the United States shall disclose all *Brady* and *Giglio*

information in its possession or of which it has become aware and shall promptly supplement its disclosure upon receipt of any additional *Brady* and *Giglio* information not previously disclosed.

To the extent that requests in this motion fall outside of *Brady* but within Rule 16 as discussed below, the United States shall disclose that evidence as ordered. The United States' disclosure shall include:

a.   Any statements of any witnesses exculpating Kangas;

b.   Any statements of witnesses which contradict statements of other witnesses;

c.   Any reports or interviews relating to 4a–b, *supra*;

d.   Any fingerprints, handwriting, or other scientific evidence obtained during the investigation, which does not identify Kangas;

e.   Any items seized from parties not charged, which tends to identify that party, rather than Kangas, with commission of the crime;

f.   Any prior convictions of prospective government witnesses;

g.   Any offers or promises made to prospective government witnesses, to include their cooperation against Kangas;

h.   Any documents, contracts, agreements, or other terms (written or oral) referring or relating to Kangas employment at Park Nicollet;

i.   Any physical or mental examinations of Government witnesses which may have relevance to the competence or credibility of a Government witness;

j.   Any arrest or conviction record of any Government witness, where that arrest or conviction is admissible to impeach the witness under Rule 609 of the Federal Rules of Evidence; and

k.   Any evidence of promises made and/or valuable consideration paid to any undercover agent, confidential informant, co-defendant, government agent, or any person acting in the employ of the Government or acting in its behalf in connection with this case in exchange for their testimony and/or involvement with this case, or any 5K1 offers, or offers of leniency for information or any other offers made by those persons.

5.   Kangas's Motion for Discovery [Docket No. 57] is **GRANTED IN PART AND DENIED IN PART** as follows:

a.   The United States shall continue to comply with all of its discovery obligations under the Federal Rules of Criminal Procedure and applicable case law.

b.   Kangas's request for all Kangas's statements, confessions, admissions, remarks, or utterances made to investigation officers or third parties, including those which may have been incorporated in any report, statement, memorandum, or other document or recording prepared by any person or federal, state, or local government agents, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to Government is **GRANTED** under Rule 16(a)(1)(A)–(B). The United States shall obtain and disclose these statements within thirty days.

c.   Kangas's request for copies of his prior criminal record, whether federal, state, or local, is **GRANTED** under Rule 16(a)(1)(D). The United States shall disclose these records within thirty days.

d.   Kangas's request for any inventory of physical or documentary evidence that the Government obtained, whether by seizure, process, or other means, which it intends to offer as evidence at trial, including its place and date of seizure, its present location, the name of the present custodian, and an opportunity to inspect and make copies of thereof, is **GRANTED IN PART AND DENIED IN PART** under Rule 16(a)(1)(E). The United States shall disclose these documents within thirty days. The United States shall not be required to disclose any document not subject to disclosure under Rule 16(a)(2).

e.   Kangas's request for all physical and documentary evidence that the Government obtained, whether by seizure, process, or other means, which is arguably relevant to the case and material to preparing the defense, even if the Government does not intend to offer it as evidence at trial, is **GRANTED** under Rule 16(a)(1)(E). The Government shall disclose these documents or make available these objects within thirty days.

f.   Kangas's request for any results or reports of physical or mental examinations, scientific tests, or experiments, which are material to preparing a defense or that the Government intends to use in its case-in-chief at trial, including reports and tests relating to chemical analysis, metallurgy, fingerprints, footprints, voice prints, and handwriting, which are within the Government's possession, custody, or control, is **GRANTED** under Rule 16(a)(1)(F). The United States shall make available these reports within thirty days.

g.   Kangas's request for the identification of any expert witness the Government intends to call at trial, including their qualifications and the substance of their

testimony, is **GRANTED**. The United States shall make this disclosure no less than 60 days before trial.

h.   Kangas's request that the Government provide a specific description of the circumstances of any search and the manner of search, including officers or third persons present, items which were seized and the exact location of their seizure, the exact time of the search and the exact time of the seizure of each item, and the manner of entry into the place where any items were seized, is **DENIED** because it falls outside the scope of any enumerated category in Rule 16 and arguably within a category of information not subject to disclosure under Rule 16(a)(2).

i.   Kangas's request for copies of all search warrants and supporting affidavits is **GRANTED** under Rule 16(a)(1)(E). The United States shall disclose these documents within thirty days.

j.   Kangas's request for the name, address, and written statement of any co-conspirator or co-participant, whether or not named in the indictment, or, if no written statements were obtained, the investigating officer's interview report relating to any co-participant's statement, activity, and testimony, as well as the name of the investigating officer(s) present when those statements were taken, is **DENIED** under Rule 16(a)(2) and 18 U.S.C. § 3500.

k.   Kangas's request for the names and addresses of all witness to the transactions described in the indictment, whom the Government does not intend to call as witnesses at trial is **DENIED** because it falls outside the scope of any enumerated category in Rule 16.

l.   Kangas's request for copies of all witness statements, whether or not the Government intends to call them at trial, no later than fifteen days before trial is **DENIED**. For witness whom the Government does not intend to call at trial, Kangas's request falls outside the scope of any enumerated category in Rule 16. For witness whom the Government intends to call at trial, those statements are Jencks material and the Court lacks authority to order the Government to disclose those statements before the witness testifies.

m.  Kangas's request for the names and addresses of all persons who gave testimony before the Grand Jury is **DENIED**.

n.   Kangas's request for all information in whatever form, source, or other nature which tends to exculpate the defendant either through his innocence or through the potential impeachment of any government witnesses; and all information of a similar nature which may be or become of benefit to the defendant in preparing for or presenting the merits of his defense of innocence at trial, is **DENIED** except as ordered above. As regards patient records, the Court will review the information *in camera* as Ordered below in Paragraph 6.

o.   Kangas's request for the dates, times, and places of any previous undercover operations involving Kangas authorized by federal, state, or local authorities or known by federal, state, or local authorities, involving confidential informants or government witnesses in this case, is **DENIED** because it falls outside the scope of any enumerated category in Rule 16.

p.   Kangas's request for reports, files, notes, photographs, tape recordings, and evidence gathered or provided by confidential informants or government witnesses

relating to Kangas or this indictment is **GRANTED IN PART** under Rule 16(a)(1)(E) if those documents or objects are material to preparing the defense. The United States shall disclose these documents within thirty days.

q.   Kangas's request for the Government to provide a statement detailing the methods and procedures used to identify Kangas and/or co-participants as the perpetrators of the offense alleged in the indictment, is **GRANTED IN PART AND DENIED IN PART**. If the United States possesses or controls an existing document, it shall disclose that document under Rule 16(a)(1)(E) within thirty days.

r.   Kangas's request for the names and addresses of all persons to whom photographs were exhibited, or audio tapes played for the purposes of identification, and when and where these displays or playbacks took place, is **DENIED** because it falls outside the scope of any enumerated category in Rule 16.

s.   Kangas's request for copies of all photocopy exhibits, or audiotapes played for the purpose of identification is **GRANTED** under Rule 16(a)(1)(E). The United States shall produce these items within thirty days.

t.   Kangas's request for the names and addresses of persons who identified him and/or any known co-participant from photographs or audiotapes as perpetrators of the offense, and those who could not identify said persons, is **DENIED** because if falls outside the scope of any enumerated category in Rule 16.

u.   Kangas's request for any documents, contracts, agreements or other terms, written or oral, referring or relating to Kangas's employment at Park Nicollet is **GRANTED** under Rule 16(a)(1)(E). The United States shall obtain and disclose these documents within thirty days.

v.  Kangas's request for all records of invoices or services rendered by Kangas to Park Nicollet and/or its patients including A) who reviewed the invoices or records of services; B) the accountants, payment specialists or controllers or other agents of alleged victim company that approved the payments; C) any internal emails within Park Nicollet that refer or relate to Kangas; D) Kangas's employment file from Park Nicollet, including hiring agreements, correspondence, meeting minutes/notes, reviews, authorizations, audio/video recordings, training materials, job description, and documents provided to Kangas during his employment/contracting by Park Nicollet, and any documents provided by Kangas to Park Nicollet, is **GRANTED IN PART AND DENIED IN PART**. If physical documents or objects exist, the United States shall obtain and disclose those items under Rule 16(a)(1)(E) within thirty days. Neither the United States, nor any of its agents or third-party arms of the prosecution team, shall be required to generate documents to disclose under Rule 16.

### Defendants' Motions for *In Camera* Review

6.    Defendants' Motions for *In Camera* Review [Docket Nos. 38 & 58] are **GRANTED**. The parties shall meet and confer to develop a plan for sampling and production to the Court for *in camera* review of the requested documents. The parties shall then schedule a hearing to occur before August 31, 2021 to present that plan to the Court.


Dated: July 21, 2021                              ___s/David T. Schultz_____
                                                  DAVID T. SCHULTZ
                                                  United States Magistrate Judge